UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CODY BECKER,<br>individually and on behalf of all<br>others similarly situated, | **CLASS ACTION** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| BROADLEAF MARKETING & SEO, LLC, | |
| Defendant.<br>_____/ | |

## CLASS ACTION COMPLAINT

Plaintiff Cody Becker brings this class action against Defendant Broadleaf Marketing & SEO, LLC, and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2. Defendant markets itself as a "one-stop-shop for all your digital marketing needs."

3. Defendant engages in unsolicited telemarketing directed towards prospective customers with no regard for their privacy rights.

4. Defendant's telemarketing consists of sending prerecorded messages to consumers to solicit the purchase of Defendant's services.

5. Defendant caused thousands of unsolicited prerecorded messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their

1

privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same prerecorded message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

10. Defendant is a Florida limited liability company with its principal address at 449 NW

35th ST, Suite 104, Boca Raton, FL 33431. Defendant directs, markets, and provides business activities throughout the State of Florida.

### THE TCPA

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

12. The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

15. In 2012, the FCC issued an order further restricting automated and prerecorded telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must establish

that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

24. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); Toney v. Quality Res., Inc., 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (emphasis added).

25. As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" Van Patten v. Vertical Fitness Grp., No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540,

5

1549 (2016) (emphasis original)).

## FACTS

26. On June 28, 2018, Defendant used the telephone number 727-900-0144 to transmit a prerecorded message to Plaintiff's cellular telephone number ending in 6305 ("6305 Number").

27. The prerecorded message stated that Plaintiff's Google listing needed attention and that by pressing a number, he could connect to a live representative.

28. Upon pressing a number, Plaintiff was transferred to a live salesperson for Defendant who attempted to sell Plaintiff search engine optimization services.

29. While Plaintiff and Defendant were talking, the call disconnected.

30. Defendant immediately called Plaintiff back from the telephone number 941-217-7525.

31. Upon Plaintiff answering the telephone, the caller identified themselves as a Senior Account Specialist with Defendant and again tried to sell Plaintiff search engine optimization services.

32. On July 13, 2018, Defendant used the telephone number 941-757-3702 to transmit a second prerecorded message to the 6305 Number.

33. Like the prerecorded message Plaintiff received on June 28, 2018, the July 13, 2018 prerecorded message claimed that Plaintiff's Google listing needed attention and that he could transfer to a live representative by pressing a number.

34. Upon information and belief, the telephone numbers 727-900-0144, 941-217-7525, and 941-757-3702 are operated by or on behalf of Defendant.

35. Complaints regarding similar or identical messages being transmitted from these telephone numbers appear on the internet, including the following:





36. Defendant's prerecorded messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

---

[1] https://www.nomorobo.com/lookup/941-757-702?v=7&utm_expid=.uTnXOhf4TGqCsrPUEzn5Nw.2&utm_referrer=https%3A%2F%2Fwww.google.com%2F (last visited July 23, 2018).

[2] https://www.nomorobo.com/lookup/941-217-7525?v=7&utm_expid=.uTnXOhf4TGqCsrPUEzn5Nw.2&utm_referrer=https%3A%2F%2Fwww.google.com%2F (last visited July 23, 2018).

37. Defendant's prerecorded messages constitute telemarketing/advertising because they promote Defendant's business, goods and services.

38. Specifically, Defendant uses the prerecorded messages to sell search engine optimization services.

39. Plaintiff received the subject prerecorded messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

40. Upon information and belief, Defendant caused similar prerecorded messages to be sent to individuals residing within this judicial district.

41. Similar complaints regarding Defendant's use of Google in their marketing, as well as their use of prerecorded messages appear on Defendant's BBB Business Profile as shown below:

| Date / Reviewer | Review |
|---|---|
| 05/30/18<br>Beth G.<br>**Negative** | Called me and said they were with Google - they are not. Initial call was friendly, getting information about my company. Then transferred to "manager" who started the "sell". Very nice overall during first part of call. I put him on hold to take another call. Came back to him and said I needed his number to call him back as I needed to take the other call and he became very aggressive with the sell. "You're information from this call will be lost if you hang up. Only have customer service number, and you're not a customer yet." "Just take a few more minutes to complete"... I asked him 5 times for a number to call back - wouldn't give it - I hung up. What business can't easily give a call back number?<br><br>Was this review helpful?  ○Yes  ○No |
| 05/24/18<br>Richard C.<br>**Negative** | Robo Called 3 - 4 times a day. First they tell me my Google listing is bad. Then they tell me they need my log in credentials to fix the listing. Third, for a fee they will write positive reviews about my business "pushing down" the negative ones. (There are none.) Fourth they informed me that they can offer SEO marketing from them. I have repeatedly informed them I am NOT interested. They got nasty, and now all of a sudden after 15 years in business I am getting negative reviews on my business. POSTED BY THE SAME TWO GUYS WHO WRITE NEGATIVE REVIEWS ON SEVERAL COMPANIES HOWEVER THEY WRITE GLORIFYING REVIEWS ON THEIR OWN BUSINESS BROADLEAF MARKETING. These guys are scam artists. |

---

[3] https://www.bbb.org/south-east-florida/business-reviews/seo-services/broadleaf-marketing-and-seo-in-boca-raton-fl-90369122/reviews-and-complaints (last visited July 23, 2018).



42.     At no point in time did Plaintiff provide Defendant with his express written consent to be contacted by prerecorded message.

43.     Plaintiff is the subscriber and sole user of the 6305 Number and is financially responsible for phone service to the 6305 Number.

44.     Defendant's unsolicited prerecorded messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's prerecorded messages also inconvenienced Plaintiff and caused disruption to his daily life.

### CLASS ALLEGATIONS

**PROPOSED CLASS**

45.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

46.     Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a prerecorded message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent.**

47.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several

---

[4] https://www.bbb.org/south-east-florida/business-reviews/seo-services/broadleaf-marketing-and-seo-in-boca-raton-fl-90369122/reviews-and-complaints (last visited July 23, 2018).

thousands, if not more.

### NUMEROSITY

48. Upon information and belief, Defendant has placed prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

49. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

50. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using prerecorded messages;
>
> (2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendant's conduct was knowing and willful;
>
> (4) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

51. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits prerecorded messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims

capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

52. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

53. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

54. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

55. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

56. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

57. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

58. Defendant – or third parties directed by Defendant – used prerecorded messages to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

59. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

60. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by prerecorded messages to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

61. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using prerecorded messages to call cellular telephone numbers. The violations were therefore willful or knowing.

62. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a

minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. Id.

63.     Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its prerecorded calls to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff, Cody Becker, on behalf of himself and the other members of the Class, prays for the following relief:

   a.    A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

   b.    A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

   c.    An injunction prohibiting Defendant from using prerecorded calls to contact telephone numbers assigned to cellular telephones without the prior express written consent of the called party;

   d.    An award of actual, statutory damages, and/or trebled statutory damages; and

   e.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the prerecorded messages as alleged herein.

Date: July 23, 2018

                                            Respectfully submitted,

                                            **HIRALDO P.A.**

                                            */s/ Manuel S. Hiraldo*_____
                                            Manuel S. Hiraldo
                                            Florida Bar No. 030380
                                            401 E. Las Olas Boulevard
                                            Suite 1400
                                            Ft. Lauderdale, Florida 33301
                                            Email: mhiraldo@hiraldolaw.com
                                            Telephone: 954.400.4713
                                            *Counsel for Plaintiff*